UNITED STATES of America, Plaintiff–Appellee,

v.

James V. McDONOUGH, Defendant–Appellant.

No. 87–1477

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1988.

■■■■■■■■■■■■

Melvyn Carson Bruder, Dallas, Tex., for defendant-appellant.

Marvin Collins, U.S. Atty., Wm. Kim Wade, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RUBIN, POLITZ, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A federal statute makes criminal the transmission of wagers in interstate commerce.[1] This court held in *Martin v. United States*[2] that such transmission is proscribed whether or not wagering is forbidden by the law of the state where the bet is received. That decision determines the law of the circuit, so we affirm a conviction for receiving bets on baseball and football games by telephone from Texas to Massachusetts despite the lack of evidence or any charge that placing such bets in Massachusetts was a state criminal offense.

James V. McDonough, who received the thirteen bets charged, asserts correctly that Congress has left, and by virtue of our federal system must leave, to the states the enforcement of laws against gambling within the states. He also asserts, again correctly, that many federal anti-gambling laws, enacted in reliance on the powers given Congress by the Commerce Clause,[3] forbid only gambling in violation of state law.[4] These postulates, however, do not support the conclusion that 18 U.S.C. § 1084(a), which contains no such provision, should be read as if it did.

McDonough contends that a federal anti-gambling law punishing conduct that is not unlawful under state law yields "an unworkable result." As we observed in *Martin*, however, section 1084,

> was part of an omnibus crime bill that recognized the need for independent federal action to combat interstate gambling operations. Other sections prohibited interstate transportation of gambling paraphernalia, 18 U.S.C. § 1953, interstate transportation of gambling machines, 15 U.S.C. § 1171, and interstate travel in aid of racketeering, 18 U.S.C. § 1952. Moreover, this series of legislation does not stand alone, but appears as part of an independent federal policy aimed at those who would, in furtherance of any gambling activity, employ any means within direct federal control.[5]

McDonough contends that this statement is incorrect because the Congressional purpose reflected by other provisions of the omnibus crime bill was to punish only conduct that in some way violated state law. Even were the argument correct, we would be bound by *Martin* as the law of the circuit.

Were we free, however, to reconsider the question we would reach the same result, for it is commanded by the plain words of the statute and by its purpose as announced in the legislative history. The statute is clear and explicit.[6] The legislative history sets forth a dual purpose—to assist the various states in enforcing their

1. 18 U.S.C. § 1084(a) (1982).

2. 389 F.2d 895 (5th Cir.1968), *cert. denied,* 391 U.S. 919, 88 S.Ct. 1808, 20 L.Ed.2d 656 (1968).

3. U.S. Const. art. I § 8.

4. *See, e.g.,* 18 U.S.C. §§ 1511(b)(1)(i), 1953(b), 1955(b)(1)(i), 1307 (1982). *See also* 15 U.S.C. § 1172 (1982).

5. 389 F.2d at 898 (footnotes omitted).

6. 18 U.S.C. § 1084(a) provides:

> Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

gambling laws *"and* to aid in the suppression of organized gambling activities ..." (emphasis added).[7] In the discussion of Subsection (b) of the statute, which permits the transmission of information assisting in the placing of bets from a state where betting on a particular event is legal to another state where such betting is legal, the House of Representatives Report specifically states:

> Nothing in the exemption, however, will permit the transmission of bets and wagers ... from or to any State *whether betting is legal in that State or not.* (Emphasis added.)[8]

For these reasons, the judgment is AFFIRMED.

---

7. The purpose of the bill was described as follows:

> The purpose of the bill is to assist the various States and the District of Columbia in the enforcement of their laws pertaining to gambling, bookmaking, and like offenses and to aid in the suppression of organized gambling activities by prohibiting the use of wire communication facilities which are or will be used for the transmission of bets or wagers and gambling information in interstate and foreign commerce.
> H.R.Rep. No. 967, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Adm.News 2631.

8. H.R.Rep. No. 967, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Adm.News 2633.